# 09-70020

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS

**F I L E D**

DEC 1 6 2009

CHARLES R. FULBRUGE III
CLERK

**UNITED STATES OF AMERICA,**

Respondent-Appellee

v.

**JULIUS OMAR ROBINSON,**

Petitioner-Appellant.



On Appeal from the United States District Court
for the Northern District of Texas
Fort Worth Division
District Court No. 4:00-CR-260

## UNITED STATES' OPPOSITION TO ROBINSON'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

JAMES T. JACKS
United States Attorney

SUSAN COWGER
Assistant United States Attorney
Texas State Bar No. 08390150
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8622
Facsimile: 214.659.8800
susan.cowger@usdoj.gov

**ATTORNEYS FOR APPELLEE**

# TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Proceedings Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Test for Issuance of a COA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Grounds Alleged for COA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    IAC Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.  Investigation of future dangerousness . . . . . . . . . . . . . . . . . . . 10

        2.  Investigation of life history and mitigating facts . . . . . . . . . . . . 14

    E.    Claim for Evidentiary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    F.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **Page(s)**

*Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 9, 16

*Emery v. Johnson*, 139 F.3d 191 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 8

*Faulder v. Johnson*, 81 F.3d 515 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 9

*Garland v. Maggio*, 717 F.2d 199 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . 7-8

*Hernandez v. Johnson*, 213 F.3d 243 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . 5

*Kitchens v. Johnson*, 190 F.3d 698 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . 8

*Lamb v. Johnson*, 179 F.3d 352 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 7

*Lockett v. Anderson*, 203 F.3d 695 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . 8

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . 8, 9

*Robinson v. United States*, 543 U.S. 1005 (2004) . . . . . . . . . . . . . . . . . . . . 2

*Slack v. McDaniel*, 529 U.S. 473 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Smith v. Cockrell*, 311 F.3d 661 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 8

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . 6, 7, 9, 10

*United States v. Fuller*, 769 F.2d 1095 (5th Cir. 1985) . . . . . . . . . . . . . . . . . 10

*United States v. Garza*, 165 F.3d 312 (5th Cir. 1999) . . . . . . . . . . . . . . . . . 3, 4, 5

*United States v. Green*, 116 F.3d 1155 (5th Cir. 1997) . . . . . . . . . . . . . . . . . 8

*United States v. Green*, 882 F.2d 999 (5th Cir. 1989) . . . . . . . . . . . . . . . . . 6, 8

**FEDERAL CASES Cont'd**                                                **Page(s)**

*United States v. Hall*, 455 F.3d 508 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . 4-5, 17

*United States v. Jones*, 287 F.3d 325 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . 2

*United States v. Webster*, 392 F.3d 787 (5th Cir. 2004) . . . . . . . . . . . . . . . . . 4, 16

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2253(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2253(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2253(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 10, 11

FED. R. APP. P. 4(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# 09-70020

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Respondent-Appellee,

v.

**JULIUS OMAR ROBINSON,**
Petitioner-Appellant.

On Appeal from the United States District Court
for the Northern District of Texas
Fort Worth Division
District Court No. 4:00-CR-260

**UNITED STATES' OPPOSITION TO ROBINSON'S
APPLICATION FOR CERTIFICATE OF APPEALABILITY**

## Introduction

The United States opposes Julius Robinson's application for a Certificate of

Appealability (COA) because he has failed to make a substantial showing that he

was denied a constitutional right.

**A.      Proceedings Below.**  On March 11, 2002, Robinson was convicted in

the United States District Court in Fort Worth of offenses stemming from his drug

trafficking activities, including three counts of murder.  (Docket Sheet ("DS"),

-1-

Doc. 1641.)  After the punishment hearing, the jury recommended that Robinson be sentenced to death.  On June 5, 2002, the court sentenced him to death on two of the charges, life imprisonment on two others, and 300 consecutive months in prison on yet another.  (DS, Doc. 1740.)

Robinson's convictions and sentence were affirmed by this Court on direct appeal.  *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004).  The United States Supreme Court denied his petition for writ of *certiorari* on November 29, 2004.  *Robinson v. United States*, 543 U.S. 1005 (2004).  He filed a timely motion for relief pursuant to 28 U.S.C.§ 2255 on November 29, 2005.  (DS, Doc. 2279.) As amended, (DS, Doc. 2432), that motion was denied on November 7, 2008. (DS, Doc. 2454.)  *See also* DS, Doc. 2453 (copied into Robinson's Appendix), hereafter cited as "Mem. Op."

Robinson filed a motion for reconsideration, specifically complaining of the district court's failure to hold an evidentiary hearing on his claims of ineffective assistance of counsel (IAC).  (DS, Doc. 2456.)  The district court denied that motion on February 17, 2009.  (DS, Doc. 2465.)  Robinson filed an application for COA in the district court on April 17, 2009, along with a timely notice of appeal. (DS, Docs. 2466-67.)  FED. R. APP. P. 4(a)(1)(B).  The only questions he presented were whether he received IAC at the sentencing phase of his trial and whether an

evidentiary hearing was required to decide that issue.[1] The district court denied a COA on July 10, 2009. (DS, Doc. 2473.) Robinson now seeks a COA from this Court, limited to the same two issues.

**B.     Test for Issuance of a COA.** The law provides that an appeal may not be taken from the final order in a proceeding under section 2255 unless either a circuit justice or a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also United States v. Garza*, 165 F.3d 312, 313-314 (5th Cir. 1999). In determining whether to issue a COA, this Court looks to the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996. *See* 28 U.S.C. §§ 2241 *et seq.*; *Garza*, 165 F.3d at 314. That law provides that "[a COA] may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In deciding whether to grant a COA, the Court is limited "to a threshold inquiry into the underlying merit of [Robinson's] claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "This threshold inquiry does not require full consideration of the factual and legal bases adduced in support of the claims." *Id.* at 336. Instead, the determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.*

---

[1] Robinson had brought several more claims for relief in his § 2255 motion (including some that were procedurally barred for not having been raised on direct appeal) but those have now been abandoned, as have a few of the particular grounds he had raised to establish IAC.

Although Robinson need not establish that he will win on the merits in order to obtain a COA, *Garza*, 165 F.3d at 314, he must make a "substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (citations omitted). *See also Miller-El*, 537 U.S. at 327 (same essential test); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

The fact that this is a death penalty case does not lighten Robinson's burden. This Court in *Jones* denied a COA to a defendant sentenced to death because he failed to shoulder the burden required under section 2253. More recently, the Court did likewise in *United States v. Webster*, 392 F.3d 787, 790 (5th Cir. 2004), where the death-penalty movant raised claims of IAC, among others. *Id.* at 792-97. The Court held there that "[r]easonable jurists cannot disagree with the district court's conclusion that counsel were not constitutionally ineffective." *Id.* at 797. *See also United States v. Hall*, 455 F.3d 508 (5th Cir.

-4-

2006) (denying COA in death-penalty case where movant raised, in part, IAC

grounds); *Garza*, 165 F.3d at 314 (denying COA to death-sentenced defendant

who had failed to show jurists of reason could debate his due process claims).

However, because this case involves the death penalty, "any doubts as to whether

a COA should issue must be resolved in [the petitioner's] favor." *Jones*, 287 F.3d

at 329, quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

    **C.    Grounds Alleged for COA.** Robinson states the following grounds

to support issuance of a COA:

> 1. His trial counsel were ineffective in failing to investigate and
> present evidence to rebut the prosecution's case on future
> dangerousness (COA Application at 7-10, 13-19, 35-36, 42);
>
> 2. His trial counsel were ineffective in failing to investigate and
> present evidence of his life history that would mitigate in his favor,
> including failing to hire a mitigation specialist or a qualified mental
> health expert (COA Application at 10-13, 14-15, 20-33, 36-37, 40, 41
> n.16, 42-44);
>
> 3. The district court should have held an evidentiary hearing on the
> IAC claims (COA Application at 45-49).

The district court rejected these contentions. In doing so, it took into

account all the evidence that habeas counsel asserted should have been presented

at sentencing and found that Robinson was not prejudiced by his lawyers' failure

to present it. That is, the court concluded – based on the evidence at trial, the

evidence proffered with the § 2255 motion, and the judge's own recollection of the

facts (DS, Doc. 2465 at 3) – that the jury's recommendation of a death sentence would not have been different if counsel had done everything Robinson claimed they should have done.

Particularly in light of the scope and nature of the lower court's ruling, this Court should deny a COA on all of Robinson's claims because he has failed to make a substantial showing that he was denied any of his constitutional rights.

**D.      IAC Claims.** "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim that he was denied his constitutional right to the effective assistance of counsel, Robinson must satisfy two requirements: (1) he must show that his attorneys' conduct fell below an objective standard of reasonableness, and (2) he must demonstrate a reasonable probability that he was prejudiced by his attorneys' unprofessional errors. *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989); *see Strickland*, 466 U.S. at 687.

To demonstrate that his counsel's conduct was deficient requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. With regard to the deficiency prong, the Supreme Court has clearly

indicated that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The performance inquiry must be whether counsel's assistance was reasonable considering all the facts of the case at the time of counsel's conduct. *Id.* at 688-690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The district court then determines whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court must keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

"Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999); *Strickland*, 466 U.S. at 690-691; *Garland v. Maggio*, 717

-7-

F.2d 199, 206 (5th Cir. 1983) ("[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"); *Moore v. Johnson*, 194 F.3d 586, 592 (5th Cir. 1999) (strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation). Representation is not inadequate merely because, with the benefit of hindsight, a court may disagree with counsel's strategic choices. *Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997); *United States v. Green*, 116 F.3d 1155, 1122 (5th Cir. 1997).

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Lockett v. Anderson*, 203 F.3d 695, 713 (5th Cir. 2000), quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Where a defendant's claim is not that counsel utterly failed to investigate or to present any mitigating evidence, but is "a matter of degrees, [*i.e.*, d]id counsel investigate enough? Did counsel present enough mitigating evidence?, [then t]hose questions are even less susceptible to judicial second-guessing." *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999); *see also Smith v. Cockrell*, 311 F.3d 661, 669 (5th Cir. 2002) (reviewing court should be wary of claims that

an attorney did not investigate <u>enough</u> or failed to present <u>enough</u> evidence); *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (stating that the deferential review mandated by *Strickland* requires courts to be "particularly wary" of claims that counsel failed to present "enough" evidence on a certain issue).

Turning to the issue of prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. A showing of prejudice requires that Robinson demonstrate his "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the petitioner must show that "it is reasonably likely that the jury would have reached a different decision absent counsel's unprofessional errors." *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996); *see also Strickland*, 466 U.S. at 694. Regarding the sentencing phase, the petitioner must establish a "reasonable probability" that the jury would not have imposed the death sentence in the absence of errors by counsel. *Strickland*, 466 U.S. at 695; *Moore*, 194 F.3d at 592. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In reviewing an ineffective assistance claim, "a court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by a defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 698; *see also United States v. Fuller*, 769 F.2d 1095, 1097 (5th Cir. 1985).

Robinson is not entitled to a COA on his IAC claims because reasonable jurists would not debate that those claims should have been resolved in a different manner or that they deserve encouragement to proceed further.

1. Investigation of future dangerousness

There are three aspects to the evidence on future dangerousness about which Robinson complains: (1) the attack of Michael Williams, who testified against Robinson, by three young men in Dermott, Arkansas; (2) Robinson's gang affiliation as a teenager; and (3) his firing a gun at a woman named Sarah Tucker who owed him money for drugs. Robinson claimed in his § 2255 motion that his lawyers failed to discover and present certain evidence regarding each of these matters and that their failure prejudiced him. The district court found that his lawyers did not perform deficiently but, assuming they did, found no prejudice to Robinson's rights because the outcome of the case would be unaffected.

a.  Michael Williams:[2]  Robinson claims that the government's evidence on this matter was false.  He argues that his lawyers did not find out enough about the attack on Williams and that available evidence would have rebutted the government's theory that Robinson had instigated the attack from jail.  The evidence that he contends should have been uncovered, however, does not show a reasonable probability of a different outcome at sentencing, as the district court found.  (Mem. Op. at 20; Doc 2465 at 5.)  Thus, there was no prejudice, and Robinson's rights were unaffected.

Robinson's basic allegation is that the three men who attacked Williams have now denied, in declarations, that they did so on Robinson's orders.  Also, he presented a new declaration from Williams himself and from a man who claimed to have been with Williams for part of the attack.  In a motion for reconsideration of the § 2255 denial, he presented yet another declaration.  But the district court found that the proffered declarations were inconsistent with each other and with trial testimony in ways that made the declarants less than credible, and that the substance of the declarations was not nearly as exculpatory as Robinson supposed.

For example, Williams testified at trial that his attackers hinted that the attack was ordered by an "OG" from Texas on whom he, Williams, had snitched.

---

[2]  The facts of this matter are described in detail, with record references, in the government's response to the § 2255 motion.  (DS, Doc. 2365 at 14-16, 50-56.)

An OG is "like a leader" and the young gang members in Arkansas saw Robinson as an OG. The inference was that the OG was Robinson, and that inference was supported by coconspirator Nathan Henderson's testimony that Robinson spoke in jail of "getting" Williams and that he reported with pleasure about the attack on Williams after it happened. Williams' new declaration says that he does not believe the assault was ordered by Robinson, but he still admits that the attackers called him a snitch and said they ought to kill him. He says he believes that they were just trying to scare him and to convince him they meant business, but were really only after his money. Regardless of whether Williams were to testify to such a belief, the grounds for inferring Robinson's involvement in the attack would still be valid.

Furthermore, the witness declarations, in the district court's view, did not appreciably call into question the government's proof on the matter, which included Henderson's testimony about Robinson's statements in jail. Finally, the district court found that, based on the jury's answers to special issues, it did not appear to have grounded its recommendation of a death sentence primarily on the issue of future dangerousness. (Mem. Op. at 18-20.) Instead, as Robinson's trial counsel opined and as is supported by the record, the death penalty was most likely imposed for two of Robinson's murders because of their brutality and premeditated nature, because of the grave danger they posed to innocent

bystanders, and because of Robinson's complete indifference to killing two men who, as it turned out, were not the intended targets. The death penalty was most likely not imposed for the third murder because Robinson was less directly involved in killing that victim. (Mem. Op. at 20.)

For all these reasons, the complaints about counsel's performance in the Michael Williams matter lead nowhere for Robinson. Where it is so plain that prejudice did not ensue from counsel's performance, a COA should not issue.

b. <u>Gang affiliation</u>:[3] The same is even more true for the allegation that Robinson's lawyers did not effectively rebut evidence that he had been a member of a gang – the Dermott Crips – when he was a young teen in Arkansas. Habeas counsel claim that trial counsel should have hired an expert to explain gangs and to conclude that the Dermott Crips were not much of a dangerous bunch. Putting aside the question of whether a court would have approved expenditure of funds for such an expert, trial counsel told the district court they chose not to linger on gang evidence because, in their experienced view, it is frightening to juries and would have done Robinson more harm than good. The district court found that trial counsel had made a reasonable strategic choice, noting also that habeas counsel offered a "schizophrenic" view of Robinson's gang activity, simultaneously seeking to portray it as relatively innocent TV-

_____

[3] *See* DS, Doc. 2365 at 43-44.

copycat behavior and as part of a "highly toxic social environment." (Mem. Op. at 27.) Ultimately, the district court found no prejudice in this aspect of the penalty case, *i.e.*, that the result would not have differed if trial counsel did what habeas counsel thought they ought to have done. (Mem. Op. at 32.)

c. Sarah Tucker:[4] Robinson contends that there was evidence available to rebut the notion that he had knowingly fired a gun at Ms. Tucker, and that his lawyers should have found and presented it. He refers to police reports and a declaration from the person who was with him when he fired the weapon. But, as the government argued below and as the district court found, these documents do not contradict the testimony of Ms. Tucker that Robinson made eye contact with her before he shot, and they would not, in the court's view, have changed the outcome of the sentencing hearing. Thus, once again, any possible deficiency in counsel's performance did not prejudice Robinson, so there was no IAC in this regard.

2. Investigation of life history and mitigating facts[5]

Habeas counsel's claims in this regard fall into two main categories, with some degree of overlap. First is the claim that Robinson's family and social

---

[4] For the facts of this matter, *see* DS, Doc. 2365 at 13-14; Doc. 2432 at 8-11; Doc. 2439 at 2-3; Mem. Op. at 5, 20-22.

[5] For the facts of these matters, *see* DS, Doc. 2365 at 34-48; Doc 2439 at 4-7; Mem. Op. at 22-32.

history, specifically how he lived his life as a child and teenager, should have been presented differently. Second is that trial counsel should have investigated further into Robinson's mental health and possible scientific reasons for his conduct. As with the proposed evidence on future dangerousness, the district court found that eve if trial counsel had investigated further than they did, none of the resulting evidence was reasonably likely to have resulted in a lesser penalty. Thus, again, there was no redressible IAC.

a. Life history: Robinson claims that his trial lawyers should have put on more, and different, evidence of his upbringing and how poor it was. He claims there should have been more information about his drug-addicted mother's behavior, his parents' violence toward each other, his lack of parental love, the deficiencies of his grandparents as child-rearers, his own abuse of alcohol as a youngster, and other similar matters.

b. Scientific evidence: The claims here are that Robinson's mother's drug and alcohol abuse while he was *in utero*, as well as exposure to pesticides as a child, resulted in "subtle" cognitive impairment that would have been considered a mitigating factor by the penalty jury. (DS, Doc. 2365 at 38-39.)

As to both of these areas, the district court found that trial counsel made reasonable strategic choices based on what they knew about Robinson. For example, the court found that counsel had little to no reason to investigate

-15-

Robinson's elementary school records when they knew of his high school, college, and vocational school performance. (Mem. Op. at 24-25.) Given the relative success in school Robinson had as an older teen and young man, the court did not believe that an investigation into his younger years was warranted. (*Id.*) Furthermore, since Robinson appeared to his lawyers and to others as a person of normal intelligence, counsel's choice not to seek to portray him as so mentally deficient that it would explain his murderous conduct was a reasonable one. (*Id.* at 26.)

Equally important, the court found that even if all of Robinson's mitigation evidence had been presented at the penalty hearing, it could not "conclude that it is reasonably likely a jury would have reached a different conclusion . . . ." *Id.* at 32. *See Webster*, 392 F.3d at 795 (finding not debatable the district court's conclusion that the penalty outcome would not have been different even with more investigation into mental retardation evidence). *See also Dowthitt*, 230 F.3d at 745 (denying COA even assuming deficient performance in investigating possible mental illness where the proposed evidence was double-edged and a different result was not likely). Thus, the court determined that under constitutional standards, Robinson had not established prejudice to his rights and had thus not established IAC.

**E.    Claim for Evidentiary Hearing.**

Robinson contends that the district court could not decide his habeas petition without taking evidence.  The court disagreed, noting carefully that it had decided his claims "either by assuming that everything Robinson alleges is true or based on legal, not factual, bases." (Mem. Op. at 45; *see also* DS, Doc. 2465 at 3-7.)  In such circumstances, an evidentiary hearing would be, as the court held, "superfluous." (DS, Doc. 2465 at 6.)  *See Hall*, 455 F.3d at 519 (denying COA and concluding that district court was not required to expand evidentiary hearing to matters as to which there were no contested fact issues).

**F.    Conclusion.**  This Court should deny Robinson's application for a COA because he has failed to shoulder his burden of making a substantial showing that his constitutional rights were violated.

Respectfully submitted,

JAMES T. JACKS
United States Attorney

SUSAN COWGER
Assistant United States Attorney
Texas State Bar No. 08390150
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214.659.8622
Facsimile:   214.659.8800
susan.cowger@usdoj.gov

-17-

# Certificate of Service

I certify that this Opposition was mailed on December 15, 2009, to:

Michael Charlton
Deputy Federal Public Defender
411 E. Bonneville Avenue, Ste 250
Las Vegas, NV 89101-6632

Sean Kennedy and Craig Harbaugh
Federal Public Defender's Office
321 E. 2d Street
Los Angeles, CA 90012-4202.

Copies were e-mailed the same day to mike_charlton@fd.org,

sean_kennedy@fd.org, and craig_harbagh@fd.org.

SUSAN COWGER
Assistant United States Attorney